UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Enrique Navarro,

Plaintiff,

vs.

United States of America,

Defendant.

Civil File No. 01-618 MJD/FLN

**REPORT AND RECOMMENDATION**

---

Plaintiff, Pro Se.
Robert M. Small and Patricia R. Cangemi for Defendant.

---

**THIS MATTER** is before the Court on Defendant's Motion to Dismiss [#13], and has been referred to the undersigned Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1. As discussed below, the Court finds that Defendant's motion must be denied.

## I. BACKGROUND

Plaintiff Enrique Navarro ("Navarro"), an inmate at the Oxford Correctional Institution in Oxford, Wisconsin, submitted a complaint for a civil action brought pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 2671-2680. (See Complaint.) The events giving rise to Navarro's claim concern his original incarceration at the Federal Correctional Institution in Sandstone, Minnesota ("FCI Sandstone"). (Id.) Navarro seeks redress for the loss or deprivation of his documented personal property during an inter-prison transfer. (Id.)



DEC 03 2001
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

Navarro arrived at FCI Sandstone on April 14, 1998. (See Def.'s Mot. to Dismiss.) On November 7, 1999, he was placed in the Segregated Housing Unit, and his property was inventoried. (See Complaint.) On February 1, 2000, Navarro's property was again inventoried in preparation for his transfer to the Federal Correction Institution in Pekin, Illinois ("FCI Pekin"). (Id.) When staff members completed the inventory, it became apparent that some of Plaintiff's property was missing. (Id.) After his arrival in Illinois, an inventory revealed that additional items were missing, and that the property invoices were in conflict. (Id.) Navarro submitted an administrative tort claim with the Bureau of Prisons on March 20, 2000. (See Def.'s Mot. to Dismiss.) On July 13, 2000, Navarro received the final denial of his claim. (See Complaint.) Plaintiff thereby exhausted all available administrative remedies. (Id.)

Navarro transferred from FCI Pekin to the Federal Correctional Institution in Oxford, Wisconsin ("FCI Oxford") on July 6, 2000. (See Declaration of Mary A. Benning.) Navarro filed an action in the U.S. District Court for the Western District of Wisconsin, seeking compensatory damages of $208.75 for the loss or destruction of his personal property during an inter-prison transfer.[1] (See Complaint.) Navarro brings this claim under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671-2680. (Id.) Under the FTCA, the United States consents to be sued for money damages for personal injuries caused by a government employee acting within the scope of his or her employment "under circumstances where the United States, if a private person, would be liable to the complainant in accordance with the law of the place where the act or

---

[1] The personal property in question includes: three bottles of skin lotion, three bottles of shampoo, three thermal shirts, three thermal pants, five magazines, four sticks of deodorant and two pairs of socks. (See Complaint.)

omission occurred." See 28 U.S.C. § 1346(b).

Defendant United States of America ("United States") filed a Motion to Dismiss, or in the alternative, to Transfer the case to Minnesota. (See Def.'s Mot. for Change of Venue.) According to the United States, the officers at FCI Sandstone were "law enforcement officers" in performance of their lawful duties. (Id.) As such, Navarro's claim falls within an exception to FTCA jurisdiction, and the Court lacks the subject matter jurisdiction necessary to hear the case. (Id.) The U.S. District Court of Wisconsin denied the Motion to Dismiss without prejudice, but ordered the case transferred to the U.S. District Court for the District of Minnesota. (See Order.) The United States now renews its Motion to Dismiss the complaint for lack of subject matter jurisdiction. (See Def.'s Mot. to Dismiss.)

## II. STANDARD OF REVIEW

Federal courts are not courts of general jurisdiction and have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto. See Marine Equipment Management Co. v. United States, 4 F.3d 643. 646 (8th Cir. 1993), citing Bender v. Williamsport Area High School District, 475 U.S. 534, 541 (1986). A federal court has a duty to inquire whether the vital prerequisite of subject matter jurisdiction has been satisfied. See Bradley v. American Postal Workers Union, AFL-CIO, 962 F.2d 800, 802 n.3 (8th Cir. 1992). When it appears the court lacks jurisdiction, jurisdiction may not be waived. See Agrashell Inc. v. Hammons Products Co., 352 F.2d 443, 447 (8th Cir. 1965).

In order to properly dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the complaint must be successfully challenged on its face or on the factual truthfulness of its averments. See Osborn v. United States, 918 F.2d 724, 729 (8th Cir. 1990). The court must

accept as true all facts pled by the non-moving party and grant all reasonable inferences from the pleadings in favor of the non-moving party. See Potthoff v. Morin, 245 F.3d 710, 715 (8th Cir. 2001).

Dismissal for lack of subject matter jurisdiction will not be granted lightly. See Wheeler v. St. Louis Southwestern Ry. Co., 90 F.3d 327, 329 (8th Cir. 1996); citing Bowe v. Northwest Airlines, Inc., 974 F.2d 101, 103 (8th Cir. 1992), cert. denied, 507 U.S. 992, 113 S.Ct. 1602, 123 L.Ed.2d 164 (1993). It should be granted sparingly and with caution. See Huelsman v. Civic Center Corp., 873 F.2d 1171, 1174 (8th Cir. 1989). Dismissal is proper, however, when a facial attack on a complaint's alleged basis for subject matter jurisdiction shows there is no basis for jurisdiction. See Wheeler, 90 F.3d at 329. When it clearly appears that the court lacks jurisdiction, the court has no authority to reach the merits, but rather, should dismiss the action. See Melo v. United States, 505 F.2d 1026, 1030 (8th Cir. 1974).

**III. DISCUSSION**

The United States, as sovereign, is immune from suit save as it consents to be sued...and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit. See United States v. Mitchell, 445 U.S. 535, 538 (1980), citing United States v. Sherwood, 312 U.S. 584, 586, 61 S.Ct. 767, 769-770, 85 L.Ed. 1058 (1941). Any waiver of sovereign immunity "cannot be implied but must be unequivocally expressed." See Mitchell, 445 U.S. at 538, quoting United States v. King, 395 U.S. 1, 4, 89 S.Ct. 1501, 1503, 23 L.Ed.2d 52 (1969). A waiver of immunity, if it exists at all, should be sought in the statute giving rise to the cause of action. See Murry v. United States, 686 F.2d 1320, 1325 (8th Cir. 1982), cert. denied, 459 U.S. 1147 (1983).

The purpose of the FTCA is to compensate private parties for injury or loss of property caused by the negligent or wrongful act or omission of any employee of the government while acting in the scope of his or her office of employment. See 28 U.S.C. §§ 1356(b), 2674. The FTCA is only a limited relinquishment of sovereign immunity, however, and specific exceptions to this general waiver of immunity can be found at 28 U.S.C. § 2680(a)-(n). The United States argues that Navarro's claim falls within § 2680(c), which states:

> The provisions of this chapter and section 1346(b) of the title shall not apply to –
>
> (c) Any claim arising in respect of assessment or collection of any tax or customs duty, or the detention of any goods or merchandise by any officer of customs or excise or any other law-enforcement officer.

See § 2680(c). See also Cheney v. United States, 972 F.2d 247 (8th Cir. 1992) (the exception to a waiver of sovereign immunity in the FTCA for claims arising from detention of goods or merchandise by law enforcement officers extends to damage claims resulting from negligent handling of detained property).

The question for determination before this Court is whether Bureau of Prison officials are "federal law enforcement officers" within the meaning of 2680(c). The Supreme Court has left open whether § 2680(c) applies to officers who are not tax or customs officials. See Kosak v. United States, 465 U.S. 848, 852 n.6 (1984) ("We have no occasion in this case to decide what kinds of "law enforcement officers," other than customs officials, are covered by this exception.")

The FTCA requires the Court to apply the substantive law of the place where the event occurred with respect to tort claims as to which the United States has waived its sovereign immunity. See 28 U.S.C. § 1346(b)(1); see also Washington v. Drug Enforcement Admin., 183 F.3d 868, 873 (8th Cir. 1999). An examination of the Eighth Circuit's interpretation of the

limitation on the United States's waiver of sovereign immunity under the FTCA reveals that the issue is has not yet been decided. There is some evidence to suggest that the FTCA has been applied to a broader range of officers than merely to customs or tax officers in this Circuit. See, e.g., United States v. Lewis, 987 F.2d 1349 (8th Cir. 1993) (undercover government agents included); see also Cheney v. United States, 972 F.2d 247 (8th Cir. 1992) (federal drug task force agents included).

When interpreting a statute, the court's task is to construe what Congress has enacted. See Duncan v. Walker, 121 S.Ct. 2120, 2124 (2001). The court should begin, as always, with the language of the statute. (Id.) § 2680(c) excludes from FTCA jurisdiction, in relevant part, "the detention of any goods or merchandise by any officer of customs or excise or any other law-enforcement officer." See 28 U.S.C. § 2680(c). The circuit courts have come to various conclusions concerning how broadly the term "law-enforcement officer" should be interpreted in this context.

The principles of *ejusdem generis* and *noscitur a sociis* suggest that a general term should be read in light of the more specific terms surrounding it. See In re Eilbert, 162 F.3d 523, 526-527 (8th Cir. 1998). For these reasons, the Sixth Circuit has held that "law enforcement officer" refers to "law enforcement officers acting in a tax or customs capacity." See Kurinsky v. United States, 33 F.3d 594, 598 (6th Cir. 1994), cert. denied, 514 U.S. 1082, 115 S.Ct. 1793, 131 L.Ed.2d 721 (1995). If the Court were to interpret the clause otherwise, the phrase "any officer of customs or excise" would be surplusage, subsumed by the more general "any other law enforcement officer." See Bazuaye v. United States, 83 F.3d 482, 484 (D.C., 1996), citing United States v. Nordic Village Inc., 503 U.S. 30, 35, 112 S.Ct. 1011, 1015, 117 L.Ed.2d 181 (1992). Nor does this Court

wish to read a meaning into § 2680(c) which is not there by including Bureau of Prisons officials as law enforcement officers. When Congress provides exceptions in a statute, it does not follow that courts have the authority to create others; the proper inference is that Congress considered the issue of exceptions, and in the end, limited the statute to the ones set forth. See United States v. Johnson, 120 S.Ct. 1114, 1118 (2000).

When the literal meaning of the statute is not conclusive, or otherwise plain words result in ambiguity when applied to the subject matter, it is necessary to construe the meaning of the statute. See In re Waugh, 109 F.3d 489, 492 (8th Cir. 1997); see also Park Towers Ltd. Partnership v. County of Hennepin, 498 N.W.2d 450, 454 (Minn., 1993). The Eighth Circuit has stated that the FTCA should be interpreted broadly in order to effectuate the legislative aim of putting private parties and the federal government on equal footing. See Lozado for and on behalf of Lozado v. United States, 974 F.2d 986, 988 (8th Cir. 1992). The lack of consensus among the circuit courts surrounding § 2680(c) combined with the lack of case material in the Eighth Circuit and in the state of Minnesota itself is indicative of the inconclusive nature of the statutory language. The Court therefore construes the pleadings in the light most favorable to the non-moving party, and concludes that dismissal of this action pursuant to Rule 12(b)(1) is improper.

## IV. RECOMMENDATION

Based upon the above, and upon all files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction [#13] be **DENIED**;

2. Plaintiff's Motion for Default Judgment [#17] be **DENIED**. The Government filed a response, that is, the instant Motion to Dismiss for Lack of Subject Matter Jurisdiction [#13] to Plaintiff's Complaint on May 16, 2001, one day before the deadline prescribed by this Court.

DATED: 11/30, 2001.

Franklin L. Noel
FRANKLIN L. NOEL
Chief Magistrate Judge

Pursuant to Local Rule 72.1(c)(2), any party may object to this report and recommendation by filing with the Clerk of Court and serving all parties, within ten days after being served with a copy thereof, written objections which specifically identify the portions of the proposed findings, recommendations or report to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under this rule shall be limited to ten pages. A judge shall make a de novo determination of those portions to which objection is made.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.

**Please forward this announcement to the recipient of this fax.**

---

# The United States District Court, District of Minnesota announces two new programs!

**Expedited Trials** –The Court will begin offering parties an opportunity to participate in a program called Expedited Trials beginning July 2, 2001. This voluntary program offers an alternative to traditional case processing by allowing for a shorter time period from filing to disposition. Discovery and motion practice will be sharply limited as a means to reduce time and expense. Procedural rules are on the Court's website at www.mnd.uscourts.gov. If you would like additional information about the Expedited Trials Program, contact one of our clerk's offices at the phone numbers listed below.

**Courtroom Technology – Phase II** – In June 2001, the District of Minnesota began upgrading, installing, and enhancing the technology available to counsel in the courtroom. The project will continue through early fall and will ultimately upgrade all Article III Judge courtrooms in St. Paul and Minneapolis. To assist counsel with this transition, the District Court is offering a hands-on class, worth one hour of CLE credit at both courthouses. Classes will be held over the lunch hour. Course registration can be done by visiting www.mnd.uscourts.gov or by calling Kristine at 612-664-5125.

**For additional information on either program please visit our website at www.mnd.uscourts.gov.**

---

700 Federal Building
316 North Robert Street
St. Paul, MN 55101
(651) 848-1100

202 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415
(612) 664-5000

417 U. S. Courthouse
515 West First Street
Duluth, MN 55802
(218) 529-3500